# United States Court of Appeals
## For the First Circuit

Nos. 08-1543; 08-1585

SITUATION MANAGEMENT SYSTEMS, INC.,

Plaintiff, Appellant/Cross-Appellee,

v.

ASP. CONSULTING LLC,

Defendant, Appellee/Cross-Appellant,

ASP. CONSULTING GROUP,

Defendant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Boudin, Circuit Judges.

William F. Dolan with whom Jones Day, Ryan C. Siden, and Siden & Associates, P.C. were on brief for appellant/cross-appellee.
Evan Fray-Witzer and Law Office of Evan Fray-Witzer on brief for the Association of Learning Providers and Blanchard Training and Development, Inc., amici curiae.
James J. Foster with whom Wolf, Greenfield & Sacks, P.C. was on brief for appellee/cross-appellant.

March 19, 2009

**LYNCH**, **Chief Judge**. The plaintiff consulting company, as part of its services to domestic and international clients, uses copyrighted training materials of several hundred pages geared toward teaching techniques for effective communication and negotiation within the workplace. It sued a competitor saying that the competitor had copied and used training materials substantially similar to plaintiff's in violation of the copyright laws.

This case concerns the proper application of two definitional criteria for what subject matter is eligible for copyright protection. The first is the originality requirement, see 17 U.S.C. § 102(a) ("Copyright protection subsists . . . in original works of authorship . . . ."), which is a constitutional prerequisite for copyright protection. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 351 (1991). The second is the statutory codification of the exclusion from copyright protection for processes and systems. See 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). Indeed, the statutory restriction in § 102(b) is a codification of "[t]he most fundamental axiom of copyright law . . . that '[n]o author may copyright his ideas or the facts he narrates.'" Feist, 499 U.S. at 344-45 (second alteration in

-2-

original) (quoting Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556 (1985)).

Here, the district court considered the plaintiff's works "largely noncopyrightable because they are devoted to describing a process or because they are not original." Situation Mgmt. Sys. v. ASP Consulting Group, 535 F. Supp. 2d 231, 240 (D. Mass. 2008). To reach this conclusion, the district court treated the originality requirement as functionally equivalent to a novelty standard. E.g., id. at 243 (finding that the plaintiff's work "does not constitute original expression because it is merely a summary of common-sense communication skills"). It read the statutory exclusion of processes and systems from copyright protection as barring protection for descriptions of processes and systems. E.g., id. at 240 (finding the plaintiff's works largely unprotected by copyright because "they focus on concepts and teach a noncopyrightable process"). The court also found the plaintiff's works noncopyrightable based upon its own subjective assessment of the works' creative worth. E.g., id. at 239 (describing SMS's works as "fodder for sardonic workplace humor" and as "aggressively vapid").

A brief from amici, an industry association along with another company that produces corporate training materials, argues that the district court's conclusions have implications far beyond the dispute between the parties to this case and put at risk the

-3-

legitimate copyright expectations of the more than $100 billion management training industry.  Indeed, amici argue that under the district court's approach, those in the training industry would have difficulty obtaining effective copyright protection for their works.  We vacate the district court's finding of noninfringement and remand for further proceedings consistent with this opinion.

## I.

For more than thirty years, plaintiff Situation Management Systems, Inc. ("SMS") has provided consulting services aimed at improving employee communication and negotiation skills within the workplace.  As part of its services, SMS has developed a series of training materials focused on teaching effective communication and negotiation techniques.  Companies buy these materials from SMS and use them in employee training workshops.  SMS typically charges its clients $200 to $250 per participant for the use of its materials.  SMS's clients include Anheuser-Busch, General Mills, NASA, Pfizer, Procter & Gamble, Verizon, and companies abroad.

A number of SMS employees, including Dane Harwood and Alexander Moore, left SMS after Sharon Malouf acquired the company through bankruptcy proceedings in 2001.  Following the end of Harwood's noncompete period, Harwood and Moore, along with an executive from a former European sublicensee of SMS, Alon Shklarek, founded defendant ASP. Consulting LLC ("ASP") in 2003.  ASP offers

training programs similar to SMS's, and the two compete for the same customers. ASP also has a series of training materials that focus on the same subject matter and teach similar communication and negotiation strategies as SMS's.

SMS claims ASP infringed its copyright in three of SMS's training workbooks: Positive Power & Influence ("PPI"), Positive Negotiation Program ("PNP"), and Promoting and Implementing Innovation ("PII"). PPI was first published in 1976 and is currently in its fourth edition. PPI is SMS's most widely circulated work and generates approximately seventy-five percent of SMS's revenues. More than a quarter million people have taken the PPI course. PNP, now in its third edition, was first published in 1978 and accounts for approximately fifteen percent of SMS's revenues. PII was first published in 1993 and is a much smaller part of SMS's business than the other two works at issue. SMS's works contain hundreds of pages of text, flowcharts, and illustrations teaching techniques for communication and negotiation within the workplace.

This suit claims infringement by three of defendant ASP's workbooks: Communicating 2 Influence ("C2I"), Negotiating Successful Agreements ("NSA"), and Championing Ideas ("CI"). SMS claims that ASP's C2I infringes its copyright to PPI, that NSA infringes PNP, and that CI infringes PII. ASP's works address the same topics as SMS's. Considering the circumstances under which

ASP developed its materials, the district court found that this similarity was no coincidence. Situation Mgmt., 535 F. Supp. 2d at 235. In particular, Harwood, Moore, and Shklarek each had access to SMS's works prior to forming ASP; Harwood even kept copies of SMS's works in the attic of his home after he left SMS. And Harwood and Moore were intimately familiar with SMS's works, having authored several editions of PPI, PNP, and PII while working at SMS. Moreover, Harwood and Moore together authored each of the allegedly infringing works relatively quickly after forming ASP. For example, they prepared a version of C2I over a period of six to thirty-four days.

On September 24, 2003, one of SMS's European licensees contacted Malouf to tell her that ASP's new C2I program was the same as SMS's PPI. Malouf then visited ASP's website and read a brief description of C2I, which she found strikingly similar to the PPI program. Malouf contacted ASP and asked to see ASP's written materials so that she could assess whether SMS had a claim against ASP for copyright infringement. SMS and ASP were unable to reach an agreement regarding the conditions under which Malouf could inspect ASP's works, and Malouf did not view ASP's works before filing suit.

On December 28, 2005, based upon the tip from the European licensee and the information on ASP's website, Malouf believed that SMS had a viable claim of copyright infringement and

-6-

sued ASP in federal district court in New Hampshire, where SMS has its principal place of business. That suit was ultimately dismissed on August 15, 2006 for lack of personal jurisdiction over ASP.

SMS then sued ASP in the District of Massachusetts on September 1, 2006. The district court denied the parties cross-motions for summary judgment, and the parties agreed to treat the matter as a case stated. The district court held a hearing on ASP's liability for copyright infringement on November 7, 2007. At the hearing, SMS stated that it would seek statutory damages, not its actual damages. SMS had sued ASP before it had incurred any substantial actual damages as a result of ASP's alleged infringement. In its post-hearing briefing, SMS explained that it was seeking statutory damages of $75,000 for each infringing work, instead of actual damages, because ASP's "sales were apparently limited (to just a few customers) but [its] conduct was deliberate."

The district court found that ASP had copied SMS's works. It recognized that "[i]t is undisputed that Harwood and Moore had intimate familiarity with SMS's programs because they helped write them" and that "Harwood, Moore, and at least one other ASP employee had access to SMS's works during the period when they generated the accused works." Situation Mgmt., 535 F. Supp. 2d at 235. This level of access to and familiarity with SMS's works, coupled with

"[t]he fact that ASP's works address the same topics as SMS's" and the speed with which ASP produced its own works, indicated "that the creators of ASP's programs used SMS's materials in creating their own." Id.

The district court, however, determined that ASP's copying was not actionable because ASP's works were not substantially similar to the copyright protected aspects of SMS's works. It found that "the works at issue are so dominated by nonprotectable material that it is impossible to reduce the work to a copyrightable essence or structure." Id. at 240. Accordingly, it held that the copyright protection for SMS's works "is limited to little more than [their] original text and formatting." Id. at 241.

Having narrowly defined the scope of SMS's copyright protection and excluded from consideration a great deal of SMS's materials, the district court then evaluated the similarities between the limited universe of SMS's and ASP's works it thought was subject to copyright protection. The district court recognized a "few minor incidents of verbatim repetition" between C2I and PPI. Id. at 244. But after excising from consideration "much of the substance" of PPI as "simply not copyrightable," id. at 242, it found that C2I and PPI "as a whole are not substantially similar," id. at 244. Likewise, it held that CI "successfully avoided infringement" of PII because "[t]here is no verbatim replication of

-8-

words or phrases, and the graphical depictions are quite distinct." Id. at 246. Finally, it found "no structural similarity" between NSA and PNP, dismissing instances of verbatim copying as "few and far between" and "of minimal importance." Id. at 248. Finding no substantial similarity between the aspects of SMS's and ASP's works that it considered protectable, the district court entered a judgment of noninfringement. Id. at 249.

SMS timely appealed. The Association of Learning Providers, an industry association serving training companies, and Blanchard Training and Development, Inc., who like SMS and ASP sells corporate training materials, filed a brief as amici curiae in support of reversal.

The district court denied ASP's request for attorneys' fees as the prevailing party in a copyright suit under 17 U.S.C. § 505. ASP cross-appeals that decision, arguing that SMS brought this "expensive, unmeritorious litigation" to drive ASP out of business. The cost of defending this suit, ASP represents, has rendered it insolvent.

II.

"In a case stated, the parties waive trial and present the case to the court on the undisputed facts in the pre-trial record. The court is then entitled to 'engage in a certain amount of factfinding, including the drawing of inferences.'" TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007) (quoting

United Paperworkers Int'l Union, Local 14 v. Int'l Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)).  We review the district court's factual findings for clear error and its legal conclusions de novo. Bunch v. W.R. Grace & Co., 555 F.3d 1, 3 n.4 (1st Cir. 2009).  Of course, a district court's use of incorrect relevant legal standards will lead to reversal unless that use had no prejudicial effects.

To establish copyright infringement, the plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist, 499 U.S. at 361; accord Mag Jewelry Co. v. Cherokee, Inc., 496 F.3d 108, 114 (1st Cir. 2007).  ASP does not dispute that SMS owns a valid copyright interest in its works, and SMS's certificates of copyright are prima facie evidence of its ownership of valid copyright interests in its works, see Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005).

Our analysis, therefore, focuses entirely on whether the district court properly applied the second element of the Feist test.  That prong "itself involves two steps: the plaintiff must show (a) that the defendant actually copied the work as a factual matter, . . . and (b) that the defendant's 'copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works "substantially similar."'" T-Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 108 (1st Cir. 2006)

-10-

(citations omitted) (quoting Johnson, 409 F.3d at 18). On appeal, ASP wisely does not contest the district court's finding of actual copying, so our analysis centers on the district court's application of the test for substantial similarity.

The burden is on the plaintiff to prove substantial similarity between the plaintiff's and defendant's works. T-Peg, 459 F.3d at 108. Substantial similarity exists "if a reasonable, ordinary observer, upon examination of the two works, would 'conclude that the defendant unlawfully appropriated the plaintiff's protectable expression.'" Id. at 112 (quoting Johnson, 409 F.3d at 18).

At oral argument, counsel for ASP argued that the district court's conclusion should best be understood as being that the amount of copying done was so small as to be de minimis. See Situation Mgmt., 535 F. Supp. 2d at 244 ("Such de minimis duplication does not amount to infringement."). Even if that were accurate, it not sufficient to salvage the district court's finding of noninfringement, however, for it ignores the fact that the court first excluded from consideration of the works copied the bulk of SMS's materials on the grounds that it was not subject to protection at all. If the court erred in that exclusion, then it used the wrong measure for substantial similarity.

Further, the de minimis copying doctrine in copyright does not operate as broadly as ASP suggests. The extent of copying

-11-

from the plaintiff's work is, of course, relevant to the analysis of substantial similarity. If such a small amount of the plaintiff's work is copied that the two works cannot be said to be substantially similar, then no infringement results.[1] See 2 Nimmer & Nimmer, Nimmer on Copyright, § 8.01[G], at 8-26 (2008) ("[F]or similarity to be substantial, and hence actionable, it must apply to more than simply a de minimis fragment."). "Used in this fashion, 'de minimis copying' represents simply the converse of substantial similarity." Id.

This statement should not be misunderstood. That the copying involved only a small portion of the plaintiff's work does not by itself make the copying permissible. Indeed, "even if the similar material is quantitatively small, if it is qualitatively important, the trier of fact may properly find substantial similarity." 4 id. § 13.03[A][2][a], at 13-55. As a result, de minimis copying is best viewed not as a separate defense to copyright infringement but rather as a statement regarding the strength of the plaintiff's proof of substantial similarity.[2]

---

[1] The extent of copying is also relevant to the fair use defense, where one factor that determines the applicability of the defense is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). ASP has not raised a fair use defense in this case.

[2] Further, commentators have viewed the de minimis copying doctrine as relating to instances of fragmented literal similarity, applicable only where "no more than a line, or a paragraph, or a page or chapter of the copyrighted work has been appropriated." 4 Nimmer & Nimmer, supra, § 13.03[A][2], at 13-53; see also id.

-12-

Where substantial similarity exists and the fair use doctrine, as here, is inapplicable, "the overwhelming thrust of authority upholds liability even under circumstances in which the use of the copyrighted work is of minimal consequence." 2 Nimmer & Nimmer, supra, § 8.01[G], at 8-26.

Here, the district court correctly recognized that the de minimis nature of the copying could lead to a finding of no substantial similarity. See Situation Mgmt., 535 F. Supp. 2d at 244. But its finding that the ASP's copying was not actionable because of its de minimis nature was based on its improper exclusion from consideration of large portions of SMS's works.

The district court also correctly stated the test for substantial similarity, but then misapplied it. Substantial similarity "focuses not on every aspect of the copyrighted work, but on those 'aspects of the plaintiff's work [that] are protectible under copyright laws and whether whatever copying took place appropriated those [protected] elements.'" T-Peg, 459 F.3d at 112 (alterations in original) (quoting Johnson, 409 F.3d at 19). After identifying the aspects of the plaintiff's work that are protected by copyright, substantial similarity is assessed by

§ 13.03[A][1][e], at 13-52 to -53 (discussing substantial similarity under the heading "Similarity of Limited Segments"). On the facts of this case, however, where SMS has identified hundreds of instances of verbatim copying and rough paraphrasing in ASP's works and has also alleged infringement through the overall structure and arrangement of ASP's works, that aspect of the de minimis doctrine simply does not arise.

-13-

comparing the protected elements of the plaintiff's work as a whole against the defendant's work.  Johnson, 409 F.3d at 18.  In performing the substantial similarity analysis, a court should be careful not to over-dissect the plaintiff's work, causing it to ignore the plaintiff's protectable expression.  See CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1515 (1st Cir. 1996) (recognizing "the potential 'danger . . . that courts . . . will so "dissect" the work as to classify all its elements as unprotectable . . . [thereby possibly] blind[ing it] to the expressiveness of their ensemble'" (alterations in original) (quoting J.C. Ginsburg, Four Reasons and a Paradox: The Manifest Superiority of Copyright over Sui Generis Protection of Computer Software, 94 Colum. L. Rev. 2259, 2561 (1994))).

Here, the district court erred in determining which aspects of SMS's works were subject to copyright protection.  This error prevented it from meaningfully analyzing the similarities between SMS's and ASP's works, caused prejudice, and requires reversal.  We explain.

A.      The Originality Requirement

The originality requirement for copyright protection is not particularly rigorous.  "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist, 499

-14-

U.S. at 345. "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." Id.

Originality under copyright -- unlike the intellectual property protection provided under patent law, see 35 U.S.C. § 102 -- "does not signify novelty," Feist, 499 U.S. at 345. It merely means that the author did not himself copy his work from another source. Indeed, even a work that is identical to another is original for purposes of copyright protection so long as the author created it independently. Id. at 345-46.

Similarly, a work's entitlement to copyright protection does not depend in any way upon the court's subjective assessment of its creative worth. See Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 251 (1903) ("It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations . . . ."); see also Feist, 499 U.S. at 345 (recognizing that the "vast majority of works" possess the requisite "creative spark" for originality, "'no matter how crude, humble, or obvious' it might be" (quoting 1 Nimmer & Nimmer, Nimmer on Copyright § 1.08[C][1] (1990))).

Here, the district court stated the correct standard for originality under copyright law, see Situation Mgmt., 535 F. Supp. 2d at 238, but misapplied it. The district court erroneously treated copyright law's originality requirement as functionally equivalent to a novelty standard. For example, the district court

-15-

found SMS's works unoriginal because, in its view, they are "filled with generalizations, platitudes, and observations of the obvious," id. at 239, contain "not-so-stunning revelation[s]," id. at 240, and teach, "[a]t their creative zenith, . . . common-sense communication skills," id. at 241.

Moreover, the district court's originality analysis was obviously tainted by its own subjective assessment of the works' creative worth. Its assessment of originality displayed nothing but pejorative disdain for the value of SMS's works. E.g., id. at 239 ("[The plaintiff's works] are dominated by unprotectable material. These works exemplify the sorts of training programs that serve as fodder for sardonic workplace humor that has given rise to the popular television show The Office and the movie Office Space. They are aggressively vapid -- hundreds of pages filled with generalizations, platitudes, and observations of the obvious." (footnote omitted)). Yet neither the works' absolute novelty nor their creative value determines whether they are original for purposes of copyright protection.

On the record evidence and applying the correct standard, SMS's works easily satisfy the originality requirement for copyright protection. ASP never argued that SMS had copied its works from another source, making them unoriginal to SMS. And SMS's works, which include text, flowcharts, and illustrations explaining techniques for communication and negotiation, certainly

demonstrate the requisite "minimal degree of creativity," <u>Feist</u>, 499 U.S. at 345, for copyright protection. Thus, the district court erroneously excluded large portions of SMS's works from consideration under its substantial similarity analysis based upon its misapplication of the originality requirement. This mistake mattered to the outcome of the case. We hold that SMS has satisfied the originality requirement for the three works in question.

B.        <u>The Statutory Exclusion for Processes and Systems</u>

        The copyright statute excludes from protection the processes and systems described in a work. <u>See</u> 17 U.S.C. § 102(b). When Congress revised the copyright code in 1976, it recognized that "[§] 102(b) in no way enlarges or contracts the scope of copyright protection under the present law. Its purpose is to restate, in the context of the new single Federal system of copyright, that the basic dichotomy between expression and idea remains unchanged." H.R. Rep. No. 94-1476, <u>reprinted in</u> 1976 U.S.C.C.A.N. 5659, 5670 (1976).

        That idea/expression dichotomy is the "most fundamental axiom of copyright law," <u>Feist</u>, 499 U.S. at 344, and "assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work," <u>id.</u> at 349-50. That is, <u>descriptions</u> of a process or system are copyrightable, but the underlying process or system

-17-

itself is not.  See Matthews v. Freedman, 157 F.3d 25, 27 (1st Cir. 1998) ("[C]opyright protects the original expressions of ideas but not the ideas expressed.").  At least one circuit court has rejected as "absurd" the argument that management training materials contain no protectable expression because they teach a noncopyrightable process.  See Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 534 (5th Cir. 1994).

Thus, to the extent that SMS's works teach a process or system for effective communication and negotiation, others may freely describe that process or system by using their own original expression.  But others may not appropriate SMS's expression when describing that process or system.

Here, the district court improperly denied copyright protection to large portions of SMS's works because it, in an error of law, found "they focus on concepts and teach a noncopyrightable process."  Situation Mgmt., 535 F. Supp. 2d at 240; see also id. at 241 (finding that "the structure or essence of SMS's works is not copyrightable" because, unlike a work of fiction that has a plot and characters, they merely discuss processes and ideas).  The fact that SMS's works describe processes or systems does not make their expression noncopyrightable.  See Feist, 499 U.S. at 350-51 (holding that a factual compilation may be entitled to copyright protection if it features an original selection or arrangement of facts even though the underlying facts themselves are

noncopyrightable).  SMS's creative choices in describing those processes and systems, including the works' overall arrangement and structure, are subject to copyright protection.  See id. (recognizing that the original selection and arrangement of noncopyrightable elements is entitled to copyright protection). The district court's analysis did what we cautioned against in CMM Cable, 97 F.3d at 1515: it lost sight of the expressiveness of the works as a whole by focusing too closely on their noncopyrightable elements.

Because the original selection and arrangement of noncopyrightable elements is itself copyrightable, the district court also erred in limiting the narrow copyright protection it allowed for SMS's works "to little more than [their] original text and formatting." Situation Mgmt., 535 F. Supp. 2d at 241.  There are numerous ways to teach the concepts and processes disclosed in SMS's works and so SMS need not show "'near identity' between the works at issue" to prove copyright infringement. Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 606 (1st Cir. 1988) (quoting Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1167 (9th Cir. 1977)).  This is not a situation where the idea and expression have merged because "there is essentially only one way to express an idea," making copying of the expression permissible. Id.  Because of its legal error, the court's resulting factual conclusions regarding

substantial similarity are clearly erroneous.  These determinations are vacated and may be determined at a new trial.

                                III.

        The district court's analysis of substantial similarity improperly excluded from consideration large portions of SMS's works under the mistaken belief that they are unoriginal or a noncopyrightable process or system, making its assessment of substantial similarity clearly erroneous.  We leave undisturbed the district court's finding of actual copying and hold, as a matter of law, that SMS's works both satisfy the originality requirement for copyright protection and are entitled to protection beyond the textual level even though they describe processes and systems.  We leave the analysis of the question of substantial similarity between SMS's and ASP's works within the framework we have outlined to be addressed on remand.

        We vacate the district court's finding of noninfringement and remand for further proceedings consistent with this opinion.  Because we vacate the district court's finding of noninfringement, we need not address the substance of the attorneys' fees issue raised by ASP's cross-appeal.  See 17 U.S.C. § 505 (allowing the award of fees to the prevailing party in a copyright infringement suit).  Each party will bear its own costs.