# United States Court of Appeals
## For the First Circuit

Nos. 10-2001; 11-1169

AIRFRAME SYSTEMS, INC.,
f/k/a Airline Software, Inc.,

Plaintiff, Appellant/Cross-Appellee,

v.

L-3 COMMUNICATIONS CORPORATION,

Defendant, Appellee/Cross-Appellant,

and

RAYTHEON COMPANY,

Defendant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Boudin, and Dyk,* Circuit Judges.

John J. Dabney, with whom Neal E. Minahan, Michael E.
Shanahan, and McDermott Will & Emery LLP were on brief, replacing
Bruce I. Afran, for appellant/cross-appellee.
Adam J. Kessel, with whom Kurt L. Glitzenstein, Jeffrey D.
Weber, and Fish & Richardson P.C. were on brief, for
appellee/cross-appellant.

September 14, 2011

*Of the Federal Circuit, sitting by designation.

**DYK, <u>Circuit Judge</u>.** In this copyright infringement case, plaintiff-appellant Airframe Systems, Inc. ("Airframe") appeals from a decision of the United States District Court for the District of Massachusetts. The district court granted defendant-cross-appellant L-3 Communications Corp.'s ("L-3") motion for summary judgment. L-3 cross-appeals, challenging the court's denial of its motion for attorney's fees. We affirm in both respects.

## I.

In 1979, Airframe began developing proprietary aircraft maintenance tracking software known as the Airline Resource Management System ("ARMS"). Since that time, Airframe has continually modified and expanded the source code of its ARMS software to create updated versions of the program. "Source code" is the original version of a computer program that is written in human-readable words and symbols. Source code must be compiled into machine-readable "object code" before a computer can read and execute the software. A program in source code format can be modified by a computer programmer, whereas a program in object code format cannot be easily modified.

In July 2003, Airframe registered and deposited with the United States Copyright Office copies of four versions of its ARMS source code: (1) an "IBM version," created and published in 1981 (Reg. No. TX 5-970-284); (2) a "PC version," created and published

in 1984 (Reg. No. TX 5-970-282); (3) a "UNIX version," created and published in 1988 (Reg. No. TX 5-970-280); and (4) a "2003 version," created and published in 2003 (Reg. No. TX 5-970-279). App. to Br. of Appellant, at 267-74. Airframe's copyright registrations became effective on April 16, 2004.

Airframe began licensing its ARMS software to L-3[1] in 1986. L-3's license was limited to the use of ARMS in compiled object code format. Nonetheless, while performing system maintenance for L-3 at some time in either 1997 or 1998, Airframe's (now former) employee John Stolarz ("Stolarz") allegedly acted without Airframe's authorization and copied some unspecified version of the ARMS source code files onto L-3's computer system. Solarz allegedly used the source code to modify the ARMS software so that it could run on L-3's newer computers—actions not authorized under L-3's license.

In August 2003, Airframe's president Gordon S. Rosen ("Rosen") discovered the unspecified version of the ARMS source code on L-3's computer system while performing system maintenance. When Rosen demanded an explanation for why L-3 possessed the source code, L-3 sent Airframe a letter explaining that the code must have

---

[1] The original 1986 license was actually to E-Systems, Inc., one of L-3's predecessors in interest. E-Systems was acquired by Raytheon in 1995 and became part of Raytheon's Aircraft Integration Systems ("AIS") division. The assets of Raytheon's AIS division, including the license to Airframe's ARMS software, were acquired by L-3 in March 2002. For simplicity, we refer to L-3 and all of L-3's predecessors in interest as "L-3."

been installed by Airframe's employee Stolarz.  L-3 contends that it then deleted the ARMS source code files from its system at Rosen's request.

Following Rosen's discovery of the ARMS source code in L-3's possession, Airframe initiated a series of copyright infringement actions against L-3 in the Southern District of New York and the District of Massachusetts.[2]  This appeal arises from the third of these actions, which Airframe filed in the District of Massachusetts in November 2008.

Airframe alleged in the present case that L-3 copied the ARMS source code to create a replacement aircraft maintenance program titled "M3."  Airframe contended that L-3 created the M3 program by merely translating the ARMS source code from its original RPG programming language to the PHP language.  Airframe further alleged that L-3 incorporated other copyrighted elements of the ARMS software into its M3 program, including proprietary report formats, menu terms and headings, and the ARMS user interfaces.[3]

---

[2] See Airframe Sys., Inc. v. L-3 Commc'ns Corp., No. 05-CV-7638, 2006 WL 2588016 (S.D.N.Y Sept. 6, 2006) (Airframe I) (dismissing Airframe's complaint for failure to state a claim); see also Airframe Sys., Inc. v. Raytheon Co., 520 F. Supp. 2d 258 (D. Mass. 2007), aff'd, 601 F.3d 9 (1st Cir. 2010) (Airframe II) (finding Airframe's claims res judicata as to acts of infringement alleged to have occurred prior to the dismissal of Airframe I).

[3] While the action below (Airframe III) was pending in the District of Massachusetts, Airframe additionally filed an action against the United States in the United States Court of Federal Claims (Airframe IV) pursuant to 28 U.S.C. § 1498(b).  In its complaint, Airframe claimed that the United States was liable for

L-3 moved for summary judgment, contending that Airframe had failed to produce sufficient evidence to support a prima facie case of copyright infringement. In opposing summary judgment, Airframe relied on the undisputed fact that L-3 had unauthorized access to some unspecified version of the ARMS source code on its computer system until at least August 2003. Airframe additionally offered a single declaration by Rosen--the principal designer of the ARMS software--in support of its infringement allegations. Rosen stated that he had examined the allegedly infringing M3 source code and compared it to the most current version of Airframe's ARMS source code (the 2009 version). After comparing about 15 percent of the source code, Rosen reported in his declaration that the programs shared "almost complete identicality down to the use of improper hyphenation and misspelled words that appeared in the original ARMS program." App. to Br. of Appellant, at 578. Rosen further reported finding programmers' comments[4] in

---

copyright infringement on the grounds that (a) the United States contracted with L-3 to develop a proprietary aviation maintenance software program; (b) that L-3 made the allegedly infringing M3 program in its capacity as a government contractor and delivered the M3 program to the United States; and (c) that the United States has used the accused M3 program without Airframe's authorization since June 2006. After the district court granted summary judgment for L-3 in Airframe III, the United States moved to dismiss the Airframe IV action on preclusion grounds. The Claims Court heard oral argument on the motion to dismiss, but it has not yet ruled.

[4] In computer programming, a "comment" is an annotation left in the source code which is ignored by the computer when compiling and executing the program. Programmers typically leave comments for explanatory purposes to make the code easier to understand.

the M3 source code that evidenced copying, including statements such as "I do not know what this code is used for so I will leave it here anyway." Id.

L-3 urged that the Rosen declaration was insufficient because the ARMS source code version which Rosen compared to the M3 program--and which was the only version that Airframe produced during discovery--was an updated version of the ARMS program created in 2009. L-3 contended that the updated 2009 version of the ARMS source code was not registered and was insufficient to establish the content of the prior source code versions covered by Airframe's copyright registrations (including the 1981 IBM version, the 1984 PC version, the 1988 UNIX version, and the 2003 version). As such, L-3 argued, Airframe could not prove there was "substantial similarity" between the M3 source code and the registered source code that was allegedly infringed.

The district court agreed, and it granted summary judgment for L-3. The court concluded that Airframe "ha[d] not produced the relevant source code" and that it was Airframe's "burden to prove the [allegedly infringed source] code in its original form." Tr. of Mot. Hr'g, Airframe Sys., Inc. v. L-3 Commc'ns Corp., No. 1:08-CV-11940, ECF No. 109, at 4, 8 (D. Mass. July 21, 2010) (Airframe III). The court further stated that "a comparison of updated [ARMS] source code [to the allegedly infringing M3 code] simply as a matter of logic won't do." Id. at

7. Accordingly, the court concluded that Airframe had failed to establish a prima facie case of copyright infringement.[5]

Airframe appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

**II.**

We review the district court's entry of summary judgment de novo. Summary judgment is appropriate if the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On appeal, Airframe almost exclusively argues that the district court improperly held that its copyright registrations were invalid for failure to deposit copies of the allegedly infringed source code with the Copyright Office. But the district court did not find Airframe's copyright registrations invalid. The court focused solely on the issue of whether Airframe had produced sufficient evidence to establish a prima facie case of copyright infringement. See Airframe Sys., No. 1:08-CV-11940, ECF No. 109. While we might properly affirm the district court because of Airframe's failure to address the issue actually decided below, we

---

[5] Because Airframe voluntarily dismissed its complaint in Airframe II, which alleged that L-3 infringed by modifying ARMS to run on its new computers, 601 F.3d at 14, the district court also ruled that Airframe's claim was res judicata as to infringing acts prior to the dismissal of Airframe II. See Tr. of Mot. Hr'g, Airframe Sys., Inc. v. L-3 Commc'ns Corp., No. 1:08-CV-11940, ECF No. 31 (D. Mass. July 23, 2009). Airframe has not appealed this ruling.

think the best course is to address the merits of the district court's summary judgment decision.  In doing so, some understanding of the structure of the Copyright Act is necessary.

While "registration is not a condition of copyright protection," 17 U.S.C. § 408(a),[6] the Copyright Act makes registration a precondition to filing a valid copyright infringement claim under the federal statute, id. § 411.  Although the Supreme Court in Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010), recently held that the Copyright Act's registration requirement "does not implicate the subject-matter jurisdiction of federal courts," id. at 1248, proof of registration of the allegedly infringed work remains an "element[] of a cause of action" for copyright infringement, id. at 1243-44.

In addition to the registration requirement, a plaintiff alleging copyright infringement has the burden of proving two elements:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC, 560 F.3d 53, 58 (1st Cir. 2009) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 360 (1991)).  We focus solely on the element of copying.

---

[6] Copyright registration may be obtained "[a]t any time during the subsistence of the first term of the copyright in any published or unpublished work in which the copyright was secured before January 1, 1978."  Id. § 408(a).

The element of "copying" itself involves a bifurcated inquiry, because all "copying does not invariably constitute copyright infringement." Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005); see also Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009). To establish actionable copying for the purposes of copyright infringement, the plaintiff must prove both: "(a) that the defendant actually copied the work as a factual matter," and "(b) that the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'" Situation Mgmt., 560 F.3d at 58 (quoting T-Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 108 (1st Cir. 2006)) (internal quotation marks omitted). Proof of "[b]oth species of copying [is] essential for the plaintiff to prevail." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01[B], at 13-10 (2011). In other words, "[n]ot all 'factual' copying constitutes legally actionable copyright infringement"; the actual copying must be extensive enough to render the works "substantially similar." Creations Unlimited, Inc. v. McCain, 112 F.3d 814, 816 (5th Cir. 2003). "Conversely, even when two works are substantially similar with respect to protectable expression, if the defendant did not copy as a factual matter, but instead independently created the work at issue, then infringement liability must be denied." 4 Nimmer & Nimmer, Nimmer on Copyright § 13.01[B], at 13-10.

Substantial similarity between the copyrighted work and the allegedly infringing work "is assessed by comparing the protected elements of the plaintiff's work as a whole against the defendant's work." Situation Mgmt., 560 F.3d at 59. The fact finder gauges this element by applying the "ordinary observer" test, under which substantial similarity is found "if a reasonable, ordinary observer, upon examination of the two works, would 'conclude that the defendant unlawfully appropriated the plaintiff's protectable expression.'" T-Peg, Inc., 459 F.3d at 112 (quoting Johnson, 409 F.3d at 18).[7] However, before the foregoing comparison can take place, the plaintiff must necessarily establish the content of the copyrighted work that it contends was infringed. Thus, to survive summary judgment in the present case, Airframe was required to present sufficient evidence of copying (including substantial similarity) with respect to at least one of the ARMS source code versions covered by its copyright registrations.

Here, the only evidence of copying Airframe presented was Rosen's declaration. Rosen made no direct comparison between the

---

[7] Where, as here, the copyrighted work involves specialized subject matter such as a computer program, some courts have held that the "ordinary observer" is a member of the work's "intended audience" who possesses "specialized expertise." Dawson v. Hinshaw Music Inc., 905 F.2d 731, 735-36 (4th Cir. 1990); see also Kohus v. Mariol, 328 F.3d 848, 857 (6th Cir. 2003); Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 713 (2d Cir. 1992); Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1232-33 (3d Cir. 1986). This court has yet to directly address this issue, and it is unnecessary to do so here.

allegedly infringing M3 program and the ARMS source code versions covered by Airframe's copyright registrations, as would normally be done. Rather, he compared the M3 program to the updated 2009 version of the ARMS source code. While this would support a finding of substantial similarity between the M3 program and Airframe's "current" source code (i.e., the 2009 ARMS source code), there is no claim that the 2009 source code was itself registered or that the 2009 version is the same as one of Airframe's earlier registered versions--the 1981 "IBM version," 1984 "PC version," or 1988 "UNIX version."[8] Rosen's declaration said nothing about similarities between the 2009 ARMS version and Airframe's earlier registered ARMS versions. Indeed, Airframe admits that they are in fact not the same, because the 2009 source code is a version "that had been updated by Airframe in the ordinary course of business." Appellant's Br. 15. Having presented no evidence sufficient to prove the content of its registered source code versions, Airframe cannot show that any of its registered works is substantially similar to the allegedly infringing M3 program, and Airframe has failed to create a genuine issue of material fact as to its claim of copyright infringement.

---

[8] We do not understand Airframe to be alleging that L-3 copied the registered "2003 version" of the ARMS source code, Reg. No. TX 5-970-279, as this version was created over five years after L-3 gained unauthorized access to some unspecified version of the ARMS source code in either 1997 or 1998.

This court previously addressed this precise issue in Unistrut Corp. v. Power, 280 F.2d 18 (1st Cir. 1960). In Unistrut, the plaintiff sought to prove infringement of the 1942 version of its catalog that it had registered with the Copyright Office, but the only evidence the plaintiff produced was an unregistered 1943 edition of the catalog "which admittedly contained some, unspecified, additions." Id. at 23. Though the "1943 edition . . . was clearly shown to have been pirated," the court dismissed the plaintiff's case "for want of proof" because the plaintiff had offered "no proof that the infringed material was contained in the [allegedly infringed] 1942 edition." Id.

The Fifth Circuit addressed a similar situation in Bridgmon v. Array Sys. Corp., 325 F.3d 572 (5th Cir. 2003), which like the present case involved computer source code. Because the plaintiff had offered no admissible evidence that could prove the content of his copyrighted source code, the district court found the evidence "insufficient to create a genuine issue of material fact as to whether [the copyrighted and accused programs] are 'substantially similar.'" Id. at 576. The Fifth Circuit affirmed, holding that the plaintiff's "failure to adduce evidence to allow a comparison between the [copyrighted source code] and the allegedly infringing program vitiates his claim." Id. at 577. The plaintiff's failure to produce sufficient evidence to prove the element of "substantial similarity" was fatal to his infringement

claim, even though there may have been "evidence of direct copying." Id.[9]

Here, Airframe has produced insufficient evidence to create a genuine issue of material fact regarding the necessary element of substantial similarity. As such, we affirm the district court's grant of summary judgment in favor of L-3.[10]

---

[9] In Bridgmon, the plaintiff had attempted to offer a "reconstruction" of his original source code made by his expert, but the district court excluded the reconstruction under the Best Evidence Rule. Id. at 576 n.5. The Best Evidence Rule requires that a party seeking to prove the "content" of a writing must introduce the "original" or a "duplicate" of the original, unless it is established that (1) all originals have been lost or destroyed (absent bad faith by the proponent); (2) the original cannot be obtained; (3) the original is in the possession of an opposing party who refuses to produce it; or (4) the writing is not closely related to a controlling issue. See Fed. R. Evid. 1001-1004; see also Seiler v. Lucasfilm, Ltd., 808 F.2d 1316, 1319 (9th Cir. 1986) (excluding a "reconstruction" of plaintiff's allegedly infringed Star Wars artwork under the Best Evidence Rule, and further noting: "The dangers of fraud in this situation are clear. The [Best Evidence Rule] ensure[s] that proof of the infringement claim consists of the works alleged to be infringed. Otherwise, 'reconstructions' which might have no resemblance to the purported original would suffice as proof for infringement of the original."). We note that, if the Best Evidence Rule is satisfied, evidence other than the original may be sufficient to establish the content of a copyrighted work. See Data East USA, Inc. v. EPYX, Inc., 862 F.2d 204, 207 & n.3 (9th Cir. 1988) (evidence sufficient where plaintiff sought to prove the content of a video game by offering still photographs of the game being played); Seiler, 808 F.2d at 1319 (noting that plaintiff must "produce the original or show that it is unavailable through no fault of his own") (emphasis added). Airframe has made no effort to satisfy the requirements of the Best Evidence Rule here.

[10] While this case was pending on appeal, Airframe informed this court that it had filed a motion with the district court seeking to set aside the court's judgment under Fed. R. Civ. P. 60(b). In its Rule 60(b) motion, Airframe informed the district court that it has since obtained copies of its registered source

-13-

We turn next to L-3's cross-appeal contending that the district court erred in denying its motion for attorney's fees. We review a district court's determination regarding attorney's fees for abuse of discretion. Spooner v. EEN, Inc., 644 F.3d 62, 66 (1st Cir. 2011). "Apart from mistakes of law--which always constitute abuses of a court's discretion--we will set aside a fee [determination] only if it clearly appears that the trial court ignored a factor deserving significant weight, relied upon an improper factor, or evaluated all the proper factors (and no improper ones), but made a serious mistake in weighing them." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 292-93 (1st Cir. 2001) (internal citations omitted).

Under the so-called "American Rule," litigants customarily bear responsibility for their own legal fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). The Copyright Act, however, creates an exception to this general rule by providing that a district court, "in its discretion," may

---

code deposits from the Copyright Office. Airframe apparently asserted that its third-party expert and Mr. Rosen concluded that at least one of Airframe's registered source code versions is substantially similar to L-3's allegedly infringing M3 program. The district court denied Airframe's Rule 60(b) motion on August 22, 2011. We express no opinion as to the merits of Airframe's failed motion, and we decide the present appeal based solely on the record before us.

"award a reasonable attorney's fee to the prevailing party" in a copyright infringement action. 17 U.S.C. § 505.

In Fogerty v. Fantasy, Inc., 510 U.S. 517, 521, 534 (1944), the Supreme Court interpreted § 505 as requiring an "evenhanded" approach under which "[p]revailing plaintiffs and prevailing defendants are to be treated alike." The Court expressly rejected the practice of requiring a showing of frivolousness or bad faith before a prevailing defendant could be awarded attorney's fees. Id. at 531-32. The Court however further noted that "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." Id. at 534. While the Court found there was "no precise rule or formula" for exercising such discretion, the Court "suggested several nonexclusive factors" that courts could consider, including:

> frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.

Id. at 534 n.19 (internal citation omitted).

We have interpreted Fogerty as allowing an award of attorney's fees to a prevailing party if the opposing party's claims are "objectively quite weak." See Garcia-Goyco v. Law Envtl. Consultants, Inc., 428 F.3d 14, 20-21 (1st Cir. 2005) (noting that "this court has applied the Fogerty factors in affirming awards of attorney's fees where the plaintiff's copyright

-15-

claim was neither frivolous nor instituted in bad faith," but was "objectively quite weak"); see also Latin Am. Music Co. v. ASCAP, 629 F.3d 262, 263 (1st Cir. 2010); InvesSys, Inc. v. McGraw-Hill Cos., 369 F.3d 16, 20-21 (1st Cir. 2004) (holding that "dishonesty is not required for an award [of attorney's fees]; even a case that is merely objectively quite weak can warrant such an award").

L-3 contends that the district court applied an incorrect attorney's fees standard. This is not a case like the Supreme Court's decision in Fogerty, 510 U.S. at 531-32, or this court's decision in Edwards v. Red Farm Studio Co., 109 F.3d 80, 82 (1st Cir. 1997), where the district court denied fees solely on the basis that the claim was not frivolous or brought in bad faith. Rather, the district court here quoted verbatim the factors that the Supreme Court suggested in Fogerty, and, as the Supreme Court recommended, it considered other factors as well. See Order, Airframe Sys., Inc. v. L-3 Commc'ns Corp., No. 1:08-CV-11940, ECF No. 122, at 1-2 (D. Mass. Feb. 8, 2011) (quoting Fogerty, 510 U.S. at 534 n.19). L-3 nonetheless argues that the court erred because it "did not cite, discuss, or quote from any of [the First Circuit's] precedents" which have interpreted Fogerty as permitting a district court to award attorney's fees when the opposing party's claims are "objectively quite weak." Appellee's Br. 49. We disagree. This court's opinions in Garcia-Goyco, 428 F.3d at 20, InvesSys, 369 F.3d at 20, and Latin Am. Music Co., 629 F.3d at 263,

-16-

applied the Fogerty standard. As such, the district court's recitation of the standard as stated by the Supreme Court in Fogerty was an accurate statement of the law, and the court was not required to elaborate by citing First Circuit opinions that have applied the Fogerty standard. We see no reason here to presume that the district court failed to understand the contours of the standard that it recited and applied.

L-3 also contends that, even if the district court did apply the correct standard, the court abused its discretion in declining to award L-3 attorney's fees because Airframe's claims were in fact "objectively quite weak." L-3 argues that Airframe's claims were "doomed to fail for lack of proof from the outset" because "Airframe could not meet its burden of proof to show infringement of [the] copyrighted source code absent evidence of the source code in question." Appellee's Br. 51. However, L-3 ignores two important points.

First, while the Fogerty standard--as interpreted in Garcia-Goyco and other cases--permits a court to award attorney's fees when the opposing party's claims are objectively weak, it does not require the court to do so. A district court has discretion to decline to award attorney's fees even when the plaintiff's copyright infringement case is quite weak.[11]

_____

[11] See Garcia-Goyco, 428 F.3d at 20 (holding that "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion" and noting that fees have been awarded in

-17-

Second, there has been no showing that the district court abused its discretion in declining to award L-3 attorney's fees on the facts of this case. As this court recently held in <u>Latin American Music Co.</u> v. <u>ASCAP</u>, 642 F.3d 87 (1st Cir. 2011):

> Our review of a fee award to a prevailing party is extremely deferential. We will disturb a ruling under section 505 only if the record persuades us that the trial court indulged in a serious lapse in judgment.

<u>Id.</u> at 91 (internal citations and quotation marks omitted). Here, the court expressly considered the fact that "Airframe's claims in the present case ultimately failed to survive summary judgment due to a lack of admissible evidence on certain essential elements" of its infringement claim. <u>Airframe Sys.</u>, ECF No. 122, at 2. The court however went on to apply each of the <u>Fogerty</u> factors and concluded that, despite the failure of proof issue, there were "no particular circumstances [that] agitate[d] in favor of compensation by way of attorney's fees." <u>Id.</u> The court did "not consider Airframe's claims to have been frivolous, improperly motivated, or objectively unreasonable," and it further emphasized that the "contentious nature" and "reasonably swift resolution" of the case weighed against a fees award. <u>Id.</u>

---

instances "where the claim was 'objectively weak'") (emphasis added) (citation omitted); <u>see also</u> <u>Latin Am. Music Co.</u>, 629 F.3d at 263 (holding that the <u>Fogerty</u> standard "<u>permits courts, in their discretion</u>, to award reasonable attorney's fees" when the opponent's claims are "objectively weak") (emphasis added); <u>InvesSys</u>, 369 F.3d at 21 (holding that a case that is "objectively quite weak <u>can</u> warrant [a fees] award") (emphasis added).

-18-

While a district court may, under some circumstances, abuse its discretion in declining to award attorney's fees, see, e.g., Mag Jewelry Co. v. Cherokee, Inc., 496 F.3d 108, 122-24 (1st Cir. 2007), each of these cases depends on its own particular facts. Given the early stage at which the present case was resolved and the fact that evidence may have been available to support Airframe's claim, we cannot say that the district court abused its discretion in denying L-3's motion for attorney's fees.

**IV.**

For the foregoing reasons, we affirm both the district court's order granting summary judgment in favor of L-3 and its order denying L-3's motion for attorney's fees.

Affirmed.

No costs.