NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0801n.06

No. 12-6190

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

HARTFORD CASUALTY INSURANCE COMPANY
and HARTFORD UNDERWRITERS INSURANCE
COMPANY,

      Plaintiffs-Appellees,

v.

DESHON EWAN and PATRICK EWAN,

      Defendants-Appellants,

and

JOHN MOSLEY, doing business as M&W Tree
Service,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Aug 28, 2013
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

**BEFORE: GILMAN, GRIFFIN, and WHITE, Circuit Judges.**[*]

**HELENE N. WHITE, Circuit Judge.** DeShon Ewan and her husband Patrick Ewan (the

Ewans) appeal the district court's declaratory judgment in favor of Hartford Casualty Insurance

Company (Hartford Casualty) and Hartford Underwriters Insurance Company (Hartford

Underwriters) (collectively, the Hartford Plaintiffs), holding that the commercial general liability

policy (CGL Policy) issued by Hartford Casualty to cover John Mosley's landscaping business does

not provide coverage for bodily injury or property damage resulting from an accident Mrs. Ewan had

---

[*]We amend the case caption as reflected in this opinion.

with Mosley's Mack truck because any resulting injury or damage was covered exclusively under the automobile policy (Auto Policy) issued by Hartford Underwriters covering the Mack truck. We AFFIRM on the basis that the CGL Policy does not provide coverage.

## I.

Mosley owns M&W Tree Service, a landscaping business in Mississippi. He also owns a Mack truck with an attached tree spade, which his workers use "to create a hole in the ground at a job site, transport the dirt to the nursery, extract a tree from the nursery, and transport and plant the tree at the job site." The Mack truck also transports the workers who perform the tree transplanting operations. Mosley purchased two insurance polices for his business: the Auto Policy issued by Hartford Underwriters and the CGL Policy issued by Hartford Casualty. Hartford Casualty and Hartford Underwriters are affiliated companies; both are members of The Hartford Insurance Group. The Mack truck is the only "covered auto" under the Auto Policy. The CGL Policy describes the covered business "John Moseley DBA: M&W Tree Service" as "landscaping (with no tree removal or snow plowing)."[1] Mosley purchased both policies at the same time and from the same agent; the policies were delivered to him in Mississippi.

In March 2005, non-party Jason Whitby, a subcontractor of M&W Tree Service, was involved in an accident with Mrs. Ewan while driving the Mack truck. Whitby allegedly struck the driver's side of Mrs. Ewan's car. The Ewans filed suit in Tennessee state court against Mosley and Whitby, seeking damages allegedly suffered as a result of the accident. Counsel for Mosley and

---

[1]Throughout this litigation and on the Auto Policy, the name of M&W Tree Service's owner has been spelled "Mosley."

Whitby disclosed the Auto Policy to the Ewans as the only applicable insurance policy and offered to settle the lawsuit for the policy limit of $500,000. The Ewans accepted this offer and executed a release and settlement agreement. Thereafter, the Ewans discovered the existence of the CGL Policy, which has a policy limit of $1,000,000. They returned to state court to rescind their earlier settlement agreement, arguing that the CGL Policy also covered the accident and that they were never told of its existence during settlement negotiations.

In November 2010, the Hartford Plaintiffs filed this action in federal court against the Ewans and Mosley, seeking a declaration that the CGL Policy does not provide coverage for bodily injury or property damage resulting from the March 2005 accident, and that any resulting injury or damage was covered exclusively under the Auto Policy. The parties agreed to proceed on a "case stated" basis in lieu of trial or summary judgment. The district court entered judgment in favor of the Hartford Plaintiffs:

> Because the CGL Policy explicitly excludes from coverage damages "arising out of the ownership, maintenance, use or entrustment to others of any . . . auto . . . owned or operated by . . . any insured," and because the Auto Policy expressly identifies the Mack truck and the tree spade as a "covered auto," this [c]ourt declares that the CGL Policy issued by Hartford Casualty does not provide coverage for alleged damages to the Ewans resulting from the Auto Accident. The Auto Accident was covered exclusively under the Auto Policy with its attendant $500,000.00 limit on liability.

*Hartford Cas. Ins. Co. v. Ewan*, 890 F. Supp. 2d 886, 896 (W.D. Tenn. 2012) (internal citation omitted) (ellipses in original). The Ewans timely appealed.

## II.

Although we have not explicitly adopted the case-stated procedure, we have recognized that parties may submit a matter to the district court for decision based on their submissions and a stipulated record. *See Int'l Union v. Winters*, 385 F.3d 1003, 1005 n.1 (6th Cir. 2004); *cf. FDIC v. St. Paul Fire & Marine Ins. Co.*, 942 F.2d 1032, 1038 (6th Cir. 1991) ("Stipulations voluntarily entered by the parties are binding, both on the district court and on us."). Under the case-stated procedure recognized by the First Circuit, "the parties waive trial and present the case to the court on the undisputed facts in the pre-trial record. The court is then entitled to engage in a certain amount of factfinding, including the drawing of inferences." *Situation Mgmt. Sys. v. ASP. Consulting LLC*, 560 F.3d 53, 58 (1st Cir. 2009) (internal quotation marks omitted). "We review the district court's factual findings for clear error and its legal conclusions de novo." *Id.*

The parties agree that

we [must] consider the policy language through the lens of the substantive contract law of [Mississippi], which includes the following concepts:

> [I]f a contract is *clear and unambiguous*, then it must be *interpreted as written*. A policy must be *considered as a whole, with all relevant clauses together*. If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party. Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage. However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy. Exclusions and limitations on coverage are also construed in favor of the insured. Language in exclusionary clauses must be clear and unmistakable, as those clauses are strictly interpreted. Nevertheless, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

4

*Architex Ass'n v. Scottsdale Ins. Co.*, 27 So.3d 1148, 1157 (Miss. 2010) (internal quotation marks omitted); *see State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So.2d 1371, 1372 73 (Miss. 1981) (summarizing the "firmly established" rules of construction for insurance contracts).

The Hartford Plaintiffs do not dispute that the CGL Policy provides a broad grant of coverage for Mosley's business, subject to exclusions. The CGL Policy contains an "auto exclusion" clause that excludes from coverage "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured."[2] The policy further states:

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment in others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.[3]

---

[2]"Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time." "Property damage" means: 1) "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;" or 2) "Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of 'occurrence' that caused it."

[3]The auto exclusion does not apply to "'[b]odily injury' or 'property damage' arising out of the operation of any of the equipment listed in Paragraphs **f.(2)** or **f.(3)** of the definition of 'mobile equipment'." The specific equipment listed in paragraphs f.(2) and f.(3) are a limited subset of "self-propelled vehicles" with permanently attached equipment: "**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment." The Ewans do not contend that the Mack truck with the attached tree spade falls under either paragraph f.(2) or f.(3) of the definition of mobile equipment.

"Auto" is defined as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But 'auto' does not include 'mobile equipment.'" The CGL Policy also contains a mobile-equipment exclusion clause (in addition to the auto exclusion) that excludes from coverage "'[b]odily injury" or 'property damage' arising out of . . . [t]he transportation of 'mobile equipment' by an 'auto' owned or operated by or rented or loaned to any insured[.]"

Construing these clauses, an auto or mobile equipment transported by an auto is excluded from coverage under the CGL Policy, but mobile equipment on its own is not. Thus, the question is whether the Mack truck with the attached tree spade is an auto (with an attached piece of machinery or mobile equipment) that is excluded from coverage under the CGL Policy, or mobile equipment that is not. *See Architex Ass'n*, 27 So.3d at 1156 ("The [insurance] policy either affords coverage or not, based upon application of the policy language to the facts presented."). There is no dispute that the Mack truck is a land vehicle that travels on public roads and has attached machinery, which falls within the definition of an "auto" under the CGL Policy. Because the Hartford Plaintiffs have established that the auto exclusion applies, the Ewans must show that there is an exception to that exclusion. *See Ass'n Cas. Ins. Co. v. Major Mart, Inc.*, No. 1:12-cv-22, 2013 WL 3409217, at *2 (N.D. Miss. July 8, 2013) ("If the insurer shows an exclusion applies, the burden shifts back to the insured to show that there is an exception to the exclusion." (collecting cases)).

The Ewans argue that the Mack truck with the attached tree spade falls under one of the following definitions of mobile equipment as an exception to the auto exclusion: 1) "Vehicles,

whether self-propelled or not, on which are permanently mounted . . . [p]ower cranes, shovels, loaders, diggers or drills"; or 2) "Vehicles . . . maintained primarily for purposes other than the transportation of persons or cargo."

Turning to the first definition of mobile equipment cited by the Ewans, the term "permanently mounted" is undefined in the CGL Policy. Mississippi courts have recognized outside the insurance context that the term "'[p]ermanent' means '[l]asting or meant to last indefinitely' or '[n]ot expected to change in status, condition, or place[.]'" *Sec'y of State v. Gunn*, 75 So.3d 1015, 1020 (Miss. 2011) (quoting Webster's II New College Dictionary 819 (2001)); *cf. Corban v. United Servs. Auto. Ass'n*, 20 So.3d 601, 609 (Miss. 2009) ("Our role is to render a fair reading and interpretation of the policy by examining its express language and applying the 'ordinary and popular meaning' to any undefined terms." (quoting *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So.2d 1159, 1165 (Miss. 2004))). Contrary to the opinion offered by the Ewans' expert, the tree spade is not *permanently* mounted to the truck by bolts and welding. Mosley purchased the tree spade while it was attached to a different truck, and he removed the tree spade from that truck to attach it to the Mack truck. He initially attached the tree spade to the Mack truck with U-bolts and by welding; the welding, however, was unsuccessful and broke within two weeks. He then attached steel rods from the truck to the tree spade to provide additional stability so that the tree spade would not "slide back." The rods are attached by bolts that have been replaced since the accident because they wear out from time to time. Mosley also believed that the tree spade was detached from the truck at least once for repairs, but he could not recall the specific details. That a piece of equipment

can be removed does not, in and of itself, mean that is not permanently mounted. Here, however, although the tree spade has been mounted to the Mack truck and is used in conjunction with the truck to perform tree transplanting operations, the evidence indicates that it is not an indefinite or unchanging truck component to be considered permanent.

Turning to the second definition of mobile equipment cited by the Ewans, their expert's conclusion that the Mack truck is not maintained primarily to transport persons or cargo is unsubstantiated by the record. Their expert contends that the truck is maintained primarily to transport the tree spade to and from a job site. Although the truck transports the tree spade, it is not maintained *primarily* for that simple purpose. Rather, as Mosley testified, the Mack truck with the attached tree spade is used to transport *trees* to the job site, his "actual business . . . is transporting them to the job [site]," and the truck transports his workers to the job site to perform the tree transplanting. The transportation of cargo and persons by the truck, therefore, is not merely incidental, but is the actual and primary purpose of the truck.

Our conclusion that the Mack truck with the attached tree spade is an "auto" and not "mobile equipment" is confirmed by reference to the Auto Policy. We discern no clear error in the district court's finding that the CGL and Auto Policies were contemporaneously executed as part of the same transaction, by the same parties, and for the same purpose of providing coverage for Mosley "doing business as" M&W Tree Service. The policies recognize that Mosley purchased multiple coverages insured by The Hartford Insurance Group. As such, the terms of the policies should be construed together under Mississippi contract law. *See Sullivan v. Mounger*, 882 So.2d 129, 135 (Miss. 2004);

*Swindle v. Harvey*, 23 So.3d 562, 568 (Miss. Ct. App. 2009) ("[T]he individual documents entered into contemporaneously should be considered integral and interrelated parts of a single global transaction, and as such, all should be construed together."). The definitions of "auto" and "mobile equipment" are substantially the same under both policies. The Mack truck with the attached tree spade is identified as the only covered "auto" in the Auto Policy. It would be incongruent to hold that the Mack truck is "mobile equipment" under the CGL Policy where the parties to the policies identified the truck as the covered "auto" under the Auto Policy. *Cf. Titan Indem. Co. v. Estes*, 825 So.2d 651, 656 (Miss. 2002) (explaining that coverage "should not vary depending upon the theories of liability asserted," and that the Mississippi courts "will not recognize a strained interpretation of a policy").

We therefore AFFIRM the district court's judgment.