# United States Court of Appeals
## For the First Circuit

No. 15-2171

BERNARDINO SANTOS-RODRÍGUEZ, G.S.G.; F.A.S.G.;
GREGORY SANTOS; MILAGROS LÓPEZ,

Plaintiffs, Appellants,

v.

SEASTAR SOLUTIONS, f/k/a/ TELEFLEX CANADA LTD.,

Defendant, Appellee,

RAÚL VIERA-TORRES; MARCELO COLÓN-TORRES; COOPERATIVA
DE SEGUROS MÚLTIPLES DE PUERTO RICO; UNKNOWN ENGINES
MANUFACTURER CORP.; UNKNOWN CONTROLS MANUFACTURER CORP.;
UNKNOWN DISTRIBUTOR CORP.; JOHN DOE; RICHARD ROE;
INSURANCE COMPANIES X, Y AND Z; SEA FOX BOAT COMPANY, INC.;
YAMAHA MOTOR MANUFACTURING CORPORATION OF AMERICA,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Marcos E. López, U.S. Magistrate Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Carlos A. Del Valle-Cruz, with whom Humberto Guzmán-Rodríguez
and Guzmán & Rodríguez were on brief, for appellants.
Salvador J. Antonetti-Stutts, with whom Aura Montes-
Rodríguez, Christian Echavarri-Junco, Nayuan Zouairabani and
O'Neill & Borges LLC were on brief, for appellee.

June 8, 2017

**TORRUELLA**, **Circuit Judge**.  Plaintiff Bernardino Santos-Rodríguez ("Santos") was injured in a boating accident when a corroded rod end that was part of the boat's steering mechanism failed.  Santos and several relatives sued Defendant Seastar Solutions ("Seastar"), the manufacturer of the boat's steering mechanism, alleging a design defect and a failure to warn.  Santos appeals from the district court's grant of summary judgment in favor of Seastar.  We affirm.

## I.  BACKGROUND

### A.  Factual Background

#### 1.  The Boating Accident

On June 25, 2010, Santos was riding in a twin-engine boat in a bay near Guayama, Puerto Rico.  Raúl Viera-Torres ("Viera") owned the boat, which was equipped with a hydraulic steering system manufactured in 2002 by Seastar (then known as Teleflex Canada Ltd.).  The rod connecting the steering system to the right motor had a ball-joint at the end, which broke while the boat was in motion, resulting in a loss of steering and ejecting Santos from the boat.  Santos sustained extensive injuries, resulting in paraplegia.  None of the other plaintiffs, all relatives of Santos, were in the boat.  Subsequent examination revealed that the rod end failed because of corrosion.

### 2. The Instruction Manual and the Boat's Maintenance

The steering system's instruction manual (the "Manual") informed owners that "[b]i-annual inspection [of the steering system] by a qualified marine mechanic is required" and instructed them to "[c]heck fittings and seal locations for leaks or damage and service as necessary." The Manual did not include a specific warning about corrosion of the rod end.

The boat's owner, Viera, acquired it second-hand. He did not perform maintenance on the boat, did not keep a maintenance log or request maintenance documentation from the previous owner, and did not read the Manual or any of the warnings affixed to the steering system. Viera hired third-party mechanics to maintain the boat, but none of those mechanics ever brought the corroded rod end to Viera's attention.

### B. Procedural History

On June 14, 2012, Santos and four relatives filed the operative complaint, claiming diversity jurisdiction and, in the alternative, maritime jurisdiction. On March 13, 2015, the district court granted summary judgment to Seastar. It first ruled that federal maritime law, rather than the substantive law of Puerto Rico, applied to the plaintiffs' claims. The district court then determined that the plaintiffs' expert did not identify a specific design defect in his expert report. In doing so, the district court ruled that the expert's deposition testimony that

Seastar had used a type of stainless steel that was prone to corrosion in marine environments was inadmissible because it was not raised in the expert's report.  The district court also ruled that Santos could not show causation on his failure-to-warn claim because there was no evidence that Viera or any person maintaining the boat had ever looked at the Manual or the steering system's warning labels.  Finally, the district court dismissed claims by Santos's relatives, which were contingent on Santos's claims.  The district court denied the plaintiffs' motion to alter or amend the judgment on September 8, 2015.

The plaintiffs timely appealed both orders.

## II.  **ANALYSIS**

"We review orders for summary judgment de novo, assessing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor." Bingham v. Supervalu, Inc., 806 F.3d 5, 9 (1st Cir. 2015).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The plaintiffs claim that the district court erred by applying federal maritime law, rather than the substantive law of Puerto Rico.  We need not address this choice-of-law issue, however, because even under the law of Puerto Rico, the plaintiffs

have not created a triable issue of fact on their claims for either a design defect or a failure to warn.

**A.  Santos Cannot Prove That Any Failure to Warn Caused His Injuries**

Under Puerto Rico law,

> [a] plaintiff alleging failure to warn must prove[:] "(1) the manufacturer knew, or should have known of the risk inherent in the product; (2) there were no warnings or instructions, or those provided were inadequate; (3) the absence of warnings made the product inherently dangerous; [and] (4) the absence of adequate warnings or instructions was the proximate cause of plaintiff's injury."

Cruz-Vargas v. R.J. Reynolds Tobacco Co., 348 F.3d 271, 276 (1st Cir. 2003) (quoting Aponte Rivera v. Sears Roebuck, 44 P.R. Offic. Trans. 6, 144 D.P.R. 830 (1998)).  The district court ruled that Santos had not shown causation because it was uncontested that Viera did not read the Manual, and there was no evidence that Santos himself, the mechanics who maintained the boat, or the boat's previous owner ever read the Manual or that anyone communicated the warnings in the Manual to Viera.

Here on appeal, the plaintiffs briefly summarize evidence that the Manual did not include any warnings about corrosion of the rod end and their expert's conclusion that the rod end was corroded and that this "caused loss of control of the steering of the boat," leading to the accident and Santos's injuries.  They then assert, without citation, that "[u]nder Puerto Rico law, this is sufficient to raise a genuine issue of material

fact." This argument does not address the district court's conclusion that "no evidence has been brought [to] the court's attention from which the trier of fact could reasonably infer that the omission of additional warnings caused Santos's damages." Unless someone read the Manual, no warnings in it could have prevented Santos's injuries. Thus, even assuming that the Manual did not contain "adequate warnings or instructions," that cannot be "the proximate cause of [Santos's] injury." Cruz-Vargas, 348 F.3d at 276; see Ramírez v. Plough, Inc., 863 P.2d 167, 177 (Cal. 1993)[1] ("Plaintiff's mother, who administered the [drug] to plaintiff, neither read nor obtained translation of the product labeling. Thus, there is no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury."); Massok v. Keller Indus., Inc., 147 F. App'x 651, 660 (9th Cir. 2005) (applying California law) ("[The plaintiff] admits that he did not read the warnings and so the sufficiency of [the manufacturer's] warnings is therefore irrelevant. [The plaintiff's] claim based on failure to warn is without merit.").

---

[1] "[T]he Supreme Court of Puerto Rico has consistently relied upon California Supreme Court precedent when considering issues raised by the doctrine of strict product liability." Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 55 (1st Cir. 1998) (citing Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 25 (1st Cir. 1998)).

-7-

**B.  Santos Cannot Prove That Any Design Defect in the Steering Rod Caused His Injuries**

To prove a products liability claim under Puerto Rico law, Santos must show that:  "(1) [Seastar's] equipment has a defect, in any of its modalities; (2) the defect existed when the product left [Seastar's] control; (3) [Seastar] is in the business of selling this type of product; (4) the defect was the adequate cause of [Santos's injuries]; and (5) [Viera] use[d] the product in a manner that was reasonable and foreseeable by [Seastar]." Rodríguez-Méndez v. Laser Eye Surgery Mgmt. of P.R., Inc., 195 D.P.R. 769, translation at 23-24 (June 15, 2016).[2]  In Rodríguez-Méndez, the plaintiff developed an eye issue after he received laser eye surgery, and he sued the manufacturer of the surgical equipment for selling a defective product.  Id. at 3.  After discovery, the manufacturer moved for summary judgment, arguing, among other things, that the plaintiff had not identified a specific defect in the surgical equipment.  Id. at 5.  The court of first instance denied summary judgment, but the Puerto Rico Supreme Court reversed and ordered dismissal.  Id. at 25.  It determined that the plaintiff's reliance on the presence of metal particles in his eye was insufficient "to establish that [the surgical] equipment suffer[ed] from a manufacturing defect [or]

---

[2]  All citations are to the certified translation filed by Seastar at Docket No. 69, Exhibit A.

was defectively designed." Id. at 24. Rather, the plaintiff's evidence established only "that it is not normal to fin[d] metal particles in one's eye," and that showing was "deficient and insufficient" to survive summary judgment. Id. at 23.

Here, the plaintiffs' expert reported that the rod end was corroded and that this corrosion "was the main cause for the failure of the subject hydraulic steering cylinder rod end." No admissible evidence shows that the corrosion was because of some defect in the product's design. In fact, the plaintiffs' expert report focuses almost exclusively on whether the Manual included adequate warnings; it does not address whether the product was properly designed.[3]

The plaintiffs assert that the rod end "failed to perform as safely as an ordinary consumer would expect" and that their expert "reported that the product's design was subject to corrosiveness." Their expert report, however, stated only that Seastar was "required to warn against all foreseeable hazards . . . associated with the subject hydraulic steering cylinder rod end's

_____

[3] At his deposition, the plaintiffs' expert testified that Seastar used a type of stainless steel that "is not a good selection for [a] marine environment," rather than a less-corrosive type of stainless steel. But the district court ruled that that testimony was inadmissible because it constituted a new theory not addressed in the plaintiffs' expert report. On appeal, the plaintiffs "rely . . . simply on the expert report, and do without the deposition testimony."

interchangeability, corrosiveness, preventive maintenance, and the risks associated with its failure." It does <u>not</u> say that the rod end's design made it particularly susceptible to corrosion.

The plaintiffs' real argument is that the rod end failed, and that this is sufficient evidence of a design defect. This is precisely the type of showing rejected in <u>Rodríguez-Méndez</u>, where the plaintiffs' only evidence was that something was wrong -- he had metal in his eye. 195 D.P.R. 769, translation at 23. Here, the plaintiffs' only showing is that something was wrong -- the rod end failed.[4] Thus, the plaintiffs did not present evidence that Seastar's design of the rod end was defective.[5]

---

[4] The plaintiffs cite to <u>Pérez-Trujillo</u> v. <u>Volvo Car Corp. (Sweden)</u>, 137 F.3d 50, 55 (1st Cir. 1998), for the proposition that "the malfunction itself is circumstantial evidence of a defective condition." This fails, first, because it is contrary to <u>Rodríguez</u>. Second, <u>Pérez-Trujillo</u> was a manufacturing defects case, in which the defendant argued that its product could not have malfunctioned in the way described. But an eyewitness directly observed the product malfunction -- an airbag deploying under normal driving conditions -- and the Court stated that "<u>direct observation of</u> the malfunction itself is circumstantial evidence of a defective condition." <u>Id.</u> (emphasis added).

[5] The plaintiffs also assert that because Santos was an invitee, he was not responsible for the boat's maintenance. Thus, they reason, if "the accident was attributable to the owner's negligence in maintenance, and not to its design," it was Seastar's burden to cross-claim against Viera. The plaintiffs cite no authority for the proposition that Seastar could be liable for Viera's negligence after he purchased the steering system, and <u>Rodríguez-Méndez</u> forecloses this possibility. 195 D.P.R. 769, translation at 24 (holding that the manufacturer would not be liable if the doctor "departed from the reasonable use of the surgical machinery or did not give the require[d] maintenance").

**C. The Plaintiffs' Derivative Claims Cannot Survive**

As Santos's four family members admit, their claims under Article 1802 of the Puerto Rico Civil Code -- Puerto Rico's general tort statute -- are derivative of Santos's claims, and so if his "claim fails, so too do[] the relative[s'] derivative claim[s]." González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 320 (1st Cir. 2009). Because the district court properly granted summary judgment on Santos's underlying claims, his relatives' derivative claims cannot succeed.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment. The parties shall bear their own costs.

**Affirmed.**