# United States Court of Appeals
## For the First Circuit

No. 21-1580

GREEN EARTH ENERGY PHOTOVOLTAIC CORPORATION; CHRISTOPHER
SCYOCURKA; PAIGE SCYOCURKA,

Plaintiffs/Counter-Defendants, Appellants,

GREEN EARTH WAMOGO, LLC,

Counter-Defendant, Appellant,

v.

KEYBANK NATIONAL ASSOCIATION,

Defendant/Counter-Plaintiff, Appellee,

KEYCORP; DOUG BEEBE,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Lynch, Thompson, and Gelpí,
Circuit Judges.

Benjamin H. Duggan, with whom Kathy Jo Cook, Timothy J.
Wilton, and KJC Law Firm, LLC were on brief, for appellants.

Curtis L. Tuggle, with whom Jessica E. Salisbury-Copper,
Thompson Hine LLP, Donald R. Frederico, Melanie A. Conroy, and
Pierce Atwood LLP were on brief, for appellee.

October 18, 2022

THOMPSON, **Circuit Judge**.   This interlocutory appeal introduces us to the rise and fall of the business relationship between solar energy companies and the bank which funded the companies' development and expansion in residential and commercial markets.   After the relationship went south, both sides sued one another; these cases are ongoing.   Today we consider the solar energy companies' appeal from the district court's order appointing a receiver.[1]   To cut to the chase, we affirm.

## THE BACKSTORY

Please bear with us as we set out the backstory to this appeal.   For reasons that will become clear once we reach our discussion of the arguments on appeal, we need to paint a comprehensive backdrop even though much of the information ultimately has no bearing on the issue before us.   The narrative below draws the information about the events which culminated in this litigation from the companies' allegations in their respective complaints and about the travel of this case from the docket entries in the district court.   The details provided do not signal that we are accepting the parties' factual allegations as true at this stage of the litigation.

---

[1]   28 U.S.C. § 1292(a)(2) specifically allows for this interlocutory appeal.

## Building the Relationship

Green Earth Energy Photovoltaic Corporation ("GEE") is a Massachusetts-based business founded in 2007 by Christopher and Paige Scyocurka. Since 2011, GEE has focused on the solar energy industry in Massachusetts and Connecticut. GEE's solar business model runs the gamut for its commercial and residential property-owning clients, starting with the design of a solar energy system for the client's use and continuing through to the maintenance of the system once it's up and going.

In 2016, GEE started a business relationship with KeyBank National Association -- a national bank we'll refer to as "KeyBank" from now on. At first, KeyBank provided commercial loans and a line of credit to GEE so GEE could contract with property owners to lease space on which GEE built and operated the solar energy systems. Under this business model, GEE owned the solar energy systems and received the tax benefits as well as the income generated from selling the electricity produced by the solar units back to the property owner. GEE and KeyBank entered into several written contracts in May 2017 establishing a "Working Capital Line of Credit" to govern their general business relationship, including contracts with titles such as Master Security Agreement, Master Equipment Lease Agreement, Business Loan Agreement, Commercial Security Agreement, Commercial Guaranty, and Promissory

Note.[2]  At KeyBank's behest, the Scyocurkas also signed personal guarantees for the line of credit.  The Commercial Security Agreement included a provision allowing that in the "event of default" (with several types spelled out) the appointment of a receiver to "take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, [and] to operate the Collateral preceding foreclosure or sale" would be one of the available remedies to KeyBank.[3]  In 2017 and 2018, GEE and KeyBank developed at least sixteen projects in Massachusetts and Connecticut under the parameters of these various contracts, each project with its own loan documents (including a promissory note and a collateral schedule).

The business model began to shift in 2017.  Some of the GEE-KeyBank projects developed under an alternative business model -- one that GEE says KeyBank initiated via an oral conversation in January 2017 in which KeyBank proposed it would continue to act as the lender for the construction of solar energy systems but KeyBank would then purchase each system upon completion and lease it back

---

[2] KeyBank initially provided approximately $12.5 million in commercial loans with a $2.5 million line of credit.  By November 2018, GEE's line of credit with KeyBank had doubled.

[3] The Commercial Security Agreement defined the Collateral to include tangible and intangible property such as equipment, inventory, tools, parts, fixtures, security instruments, investment accounts, software, data, etc.

to GEE, which would operate the system on KeyBank's behalf.[4]  GEE refers to this alternative model as the "sale-leaseback plan." According to GEE, KeyBank stated it could provide $40 million for these projects and could obtain syndicated financing for an additional $30-40 million.  The companies, however, did not put the sale-leaseback plan, business model, or any terms of the oral agreement in writing.

Over the next several months, GEE and KeyBank executives were in touch, giving one another updates.  In April 2018, a new KeyBank executive (Doug Beebe) entered the GEE-KeyBank relationship and the companies continued to work together to further develop and structure the sale-leaseback plan as well as further the first project under the plan -- a facility on Wamogo Road in Litchfield, Connecticut.  Meanwhile, Massachusetts was in the midst of piloting a new solar energy program known as SMART (Solar Massachusetts Renewable Target), and the companies developed plans to take advantage of it.

**Breaking the Relationship**

KeyBank threw the first wrench into the business relationship gears in August 2018 when Beebe told the Scyocurkas that he had cold feet about moving forward with the sale-leaseback

---

[4] This alternative plan would allow KeyBank, as the owner of the solar energy system, to reap the then rapidly expanding tax benefits of solar energy system ownership.

plan for residential projects under Massachusetts' SMART program. GEE was floored -- believing it had KeyBank's backing, it had invested millions in preparing to engage in residential SMART programs.  So it reached out to the KeyBank exec (Scott Frazer) with whom it had worked from the beginning.  Frazer told GEE he had some ideas on how to resolve his colleague's concerns.

In September 2018, when GEE finished the Wamogo project in Connecticut, the parties got together to celebrate.  The celebration included a discussion of three commercial projects ready to begin which would utilize Massachusetts' SMART program benefits.  The next month, Massachusetts delayed the rollout of the SMART program and, to GEE's dismay, KeyBank officially reneged on all the planned SMART projects -- residential, commercial, and industrial -- with Beebe announcing to GEE that KeyBank was "not interested" in funding these projects.

GEE did not give up; in response to KeyBank's request for an "additional equity infusion" (presumably into the parties' business relationship), the Scyocurkas mortgaged their home to KeyBank for $1.2 million and continued to reach out to other KeyBank executives, especially after the SMART program eventually rolled out at the end of November.  In March 2019, the Scyocurkas met with KeyBank executives, but KeyBank would not reverse its position.  As a result, GEE has been unable to finish the projects it had started in reliance on the sale-leaseback plan, KeyBank's

promises for substantial financing, and the written financing agreements with KeyBank. According to KeyBank, GEE hasn't made a payment on any of the projects' individual promissory notes since September 1, 2019 and, as of June 2020, GEE and the Scyocurkas allegedly owed KeyBank over $9 million.

## HOW THE PARTIES LANDED HERE, NOW

### Claims and Counterclaims

In 2019, GEE and the Scyocurkas (collectively "GEE") filed a complaint against KeyBank, alleging several claims stemming from the alleged oral agreement about the sale-leaseback plan including breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, misrepresentation (intentional and negligent), RICO (based on wire fraud), civil conspiracy, and violation of Mass. Gen. Laws ch. 93A ("Chapter 93A").[5] GEE asked the district court to enter a preliminary injunction ordering KeyBank not to terminate or call in any of the loans or lines of credit extended to GEE or to the Scyocurkas individually throughout the pendency of the litigation. The district court temporarily granted the relief requested but then,

---

[5] The defendants initially included KeyCorp (KeyBank's parent company) and Doug Beebe (VP of Energy Solutions for KeyBank) as well, but GEE eventually voluntarily dismissed Beebe and the district court eventually dismissed all claims alleged against KeyCorp. Also, GEE dropped the conspiracy and RICO claims early on.

after a hearing in which it determined GEE was unlikely to succeed on the merits, denied GEE's motion.[6]

KeyBank filed a Rule 12(b)(6) motion to dismiss GEE's entire complaint, to which part of GEE's responses was to twice move to amend its complaint; first to add factual allegations and second to add a breach of contract claim and a breach of the covenant of good faith and fair dealing claim specifically for the project at the Boys & Girls Club in Springfield, Massachusetts. The district court allowed GEE to add the claims related to the Springfield Boys & Girls Club project, granted KeyBank's motion to dismiss the claims based on the sale-leaseback plan allegations, and denied as futile GEE's first motion to amend to add factual allegations about the sale-leaseback plan. The district court also ordered GEE to file an amended complaint, which removed the dismissed claims and fact allegations related thereto and which did not support the remaining claims.

GEE filed an amended complaint, detailing the set of loan contracts for the Springfield Boys & Girls Club project (which had been agreed to under the original loan business model and not the sale-leaseback plan), and claiming KeyBank breached these contracts by refusing to pay the final loan "progress payment."

---

[6] The district court concluded GEE had not shown that the parties formed an enforceable contract regarding the sale-leaseback plan and therefore was not likely to succeed on the merits of its claims against KeyBank.

This amended complaint also continued to include all the original factual allegations from the original complaint related to the sale-leaseback plan. KeyBank cried foul, asking the district court to strike the allegations not pertaining to the Springfield project. The district court granted KeyBank's motion.[7] KeyBank then answered GEE's amended complaint and alleged several counterclaims for breach of contract and foreclosure.

For its part, KeyBank then initiated a new federal action against GEE, Green Earth Wamogo, LLC, and the Scyocurkas, alleging these defendants defaulted on their respective payment obligations under several loans and lines of credit, seeking to recover for the alleged breach of several contracts governing the Wamogo project in Connecticut, and seeking to foreclose on the collateral security interests identified in these contracts. GEE first responded with a motion to dismiss, arguing that, pursuant to Federal Civil Procedure Rule 13(a), KeyBank's claims are compulsory counterclaims that should have been made in response to GEE's claims in the initial case. The district court saw KeyBank's claims differently, reasoning that these claims were based on

---

[7] GEE also claimed breach of the covenant of good faith and fair dealing, violation of Chapter 93A, and promissory estoppel based on the Springfield Boys & Girls Club project. KeyBank's motion asked the district court to dismiss the Chapter 93A and promissory estoppel claims because GEE's motion to amend had not specifically requested to add these two precise counts. The district court granted KeyBank's request on this front too.

- 10 -

contract documents that were distinct from those alleged in GEE's complaints.  Thereafter, GEE filed an answer and asserted several counterclaims, including breach of contract, misrepresentation, and Chapter 93A claims based on the same allegations as in the other case.  KeyBank moved to dismiss the counterclaims, asserting they were identical to the claims already dismissed by the district court in the initial cause of action.  The district court agreed and dismissed the counterclaims.

At the parties' request, the district court consolidated the two cases.[8]

And with the backdrop painted, we finally reach the motion and order at issue in this interlocutory appeal.

**Receivership Sought and Granted**

Soon after KeyBank filed its complaint, KeyBank filed a motion for the appointment of a receiver "to take custody and control of the operation, management, income, property (real, personal, tangible, intangible) and assets of Green Earth Energy

---

[8] By our count, the following claims survived the pleading motion practice and are still pending:  GEE's breach of contract and breach of the covenant of good faith and fair dealing claims related to the Springfield Boys & Girls Club project; KeyBank's counterclaims alleging breach of contract of the Master Security Agreement, Project Loan Promissory Notes, Springfield Boys & Girls Club loan agreement, Bible Way project loan agreement -- seeking to foreclose on each -- and the Scyocurkas' personal guaranty agreements; and KeyBank's claims in the consolidated action (based on GEE's and Green Earth Wamogo's alleged default on the Working Capital Line of Credit, Wamogo Lease, and Corporate Guaranties).

- 11 -

Photovoltaic Corporation [GEE] and Green Earth Wamogo, LLC." KeyBank argued that the contracts governing the Connecticut Wamogo project authorized the appointment of a receiver if a qualifying "event of default" occurred and that GEE was indeed in default on these contracts, owing KeyBank more than $5 million under the Working Capital documents alone and being in a precarious financial position overall. GEE opposed the motion, arguing both that the appointment of a receiver had not been justified by KeyBank because the parties are locked in a dispute over which party breached which contract first and that the scope of receivership powers sought by KeyBank was too broad. The district court sided with KeyBank, concluding that

> the appointment of a receiver [wa]s warranted by [KeyBank's] status as a secured creditor; [GEE's] ongoing failure to make payments on the Working Capital [Line of Credit] and Wamogo lease, especially given the absence of allegations that [KeyBank] has breached those agreements; [GEE's] own statements about their precarious financial situation; and [GEE's] prior consent, when signing the relevant loan agreements, to the appointment of a receiver in the event of a default.

That being said, the district court also expressed "concerns about certain provisions in [KeyBank's] proposed order appointing receiver" and ordered the parties to confer about the proposed order and report back with areas of agreement and areas of conflict. The parties complied; the court held a hearing in June 2021 to further discuss and then ordered the parties to produce a

- 12 -

list of receivers.[9]  In late July 2021, the court issued a detailed order naming the Receiver and terms of the receivership.

GEE filed a notice of appeal to challenge the Order Appointing Receiver, stating that it is appealing "from the Order Appointing Receiver entered in [this case] on July 26, 2021 (ECF# 113)."  GEE also sought but was refused a stay order, and the receivership proceedings have been actively continuing since GEE initiated this interlocutory appeal.[10]

## OUR TAKE

Ordinarily, we do not have jurisdiction to review a non-final order.  28 U.S.C. § 1291.  But, as noted earlier, appellate

---

[9] In June 2021, while the district court was mulling over the parties' arguments about the scope of the receivership as well as who would be appointed receiver, GEE filed a motion asking the district court to issue a final judgment pursuant to Rule 54(b) so GEE could appeal the court's order dismissing all of its claims related to the sale-leaseback plan as well as the court's order granting KeyBank's motion to strike the factual allegations related to the sale-leaseback plan in the Third Amended Complaint and GEE's Chapter 93A and promissory estoppel claims related to the Springfield project from the amended complaint.  The district court denied the request, noting that nine months had passed since it had issued its order granting KeyBank's motion to dismiss the claims based on the sale-leaseback plan and concluding that judicial economy favored resolving the remaining claims without any additional delay.

[10] We note that there is one additional related case which the district court did stay pending resolution of this appeal.  With the district court's permission, in June 2022 the Receiver filed suit against various GEE entities, alleging the Scyocurkas fraudulently transferred assets from Green Earth Energy Photovoltaic Corporation into a newer corporate entity, Green Earth Roofing Solutions (owned by Christopher Scyocurka's daughter, Taylor Scyocurka).

jurisdiction to review an interlocutory appeal challenging the appointment of a receiver is explicitly provided in 28 U.S.C. § 1292(a)(2). This court reviews a district court's appointment of a receiver for abuse of discretion.[11] Consol. Rail Corp. v. Fore River Ry. Co., 861 F.2d 322, 326 (1st Cir. 1988).

Despite GEE's stated intention to appeal the appointment of the Receiver, the question GEE presents in its briefing before us reflects a different focus: "Did the trial court err when it ruled that [GEE] failed to set forth a plausible claim for relief on the question of the overarching $70-80 million sale-leaseback lending relationship between the parties?" GEE's arguments before us on appeal, boiled down to their essence, go something like this: KeyBank was not entitled to the appointment of a receiver because the "pertinent written agreement" says "KeyBank may only seek the appointment of a receiver upon the occurrence of an 'Event of Default.'" GEE then contends that "[t]he question of whether [it] 'defaulted' turns on whether KeyBank breached its contractual obligations to [it] before [GEE] stopped making payments to KeyBank" because GEE's nonpayment would be excused if KeyBank is determined to have been the first to breach. According to GEE,

_____

[11] GEE suggests we should apply a de novo standard of review instead because the district court ordered the appointment of the receiver after making a "legally and factually improper ruling" to dismiss most of GEE's claims. We decline GEE's invitation to deviate from the well-established standard of review in this discrete and narrow interlocutory appeal.

- 14 -

because the district court's conclusion that GEE hadn't plausibly alleged the effective formation of the oral contract for the sale-leaseback plan was wrong, this court should vacate the order appointing the Receiver with instructions that the district court reconsider the motion to dismiss the contract claims. GEE talks up the ways the district court erred by dismissing GEE's claims related to the sale-leaseback plan rather than articulating any defects in the appointment of the Receiver.[12]

Hold up, says KeyBank: This court doesn't have jurisdiction to consider any arguments related to the district court's dismissal of any substantive claims at this juncture. The sole question this court may address at this time, states KeyBank, is whether the district court abused its discretion when it entered the order appointing the Receiver and there was no abuse of discretion here. In reply, GEE contends that the receivership order is inextricably linked to the dismissal order because KeyBank would not have sought -- and the district court could not have ordered -- the appointment of a receiver if GEE's allegations and claims about the sale-leaseback plan had not been dismissed.

_____

[12] GEE drops no ink whatsoever on whether it disagrees with any of the terms of the receivership, the scope of the receivership the district court set forth in the order, or any of the actions the Receiver has taken since the district court entered the order. To that end, KeyBank asserts (and we agree) that GEE has waived any challenge to the actual receivership order because GEE does not engage with the content of the receivership order at all.

According to GEE, the receivership cannot be affirmed without first examining whether the district court erred by dismissing some of GEE's claims.

While GEE does not phrase its arguments quite this way, it is clearly hoping that we will exercise pendent appellate jurisdiction to review the district court's orders striking and dismissing GEE's allegations and claims related to the Massachusetts sale-leaseback plan. "The burden of establishing jurisdiction rests with the party who asserts its existence," Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 551 (1st Cir. 2005), a burden GEE has not met here. This court only exercises pendent jurisdiction when either (1) the "non-appealable issue is inextricably intertwined with one or more appealable issues or [(2)] review of a non-appealable issue is essential to ensure meaningful review of an appealable issue." P.R. Ports Auth. v. BARGE KATY-B, 427 F.3d 93, 107 (1st Cir. 2005) (first citing Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 51 (1995) and then citing Limone v. Condon, 372 F.3d 39, 51 (1st Cir. 2004)); Whole Woman's Health v. Jackson, 142 S. Ct. 522, 531 (2021) (reiterating the test for pendent appellate jurisdiction); United States v. Bilodeau, 24 F.4th 705, 716 (1st Cir. 2022) (considering whether the pendent-appellate-jurisdiction exception was met in the context of an interlocutory appeal in a criminal case). Issues that fit "within the[se] narrow confines" and for "which the

exercise of pendent appellate jurisdiction is appropriate are hen's-teeth rare." P.R. Ports Auth., 427 F.3d at 107. To be sure, the orders GEE insists must be reviewed now are indeed related to the receivership appointment but are neither so intertwined nor essential to ensure meaningful review of the order appointing the Receiver. Here's why: Simply put, the contracts governing the projects KeyBank identified in its motion for appointment of a receiver are separate and distinct from the alleged oral contract to provide $70-80 million in financing under the sale-leaseback plan.[13] See id. And contrary to GEE's assertion, the fact that the parties have engaged in multiple business dealings with one another does not detract from the parties' practice of carefully and intentionally structuring separate and enforceable contracts for each of the solar energy undertakings.[14] At this stage of the litigation between the parties, we lack jurisdiction over GEE's dismissed claims.

---

[13] GEE is also clearly trying to use this interlocutory appeal as a back-door entry to get these interlocutory orders on our bench. We are mindful that GEE sought but was denied a Rule 54(b) judgment on these orders.

[14] To the extent GEE is arguing that an expeditious review and reversal of its dismissed claims against KeyBank would result in a set off of any monies it might owe KeyBank, thereby obviating the need for a receiver, we note that should GEE ultimately be successful down the road, nothing in the record suggests it would not have an adequate remedy at law.

Once we step over GEE's arguments related to the dismissal of its claims, we find no other arguments to consider related to the district court's order appointing the Receiver or why the district court may have abused its discretion by so ordering. As we acknowledged in Consolidated Rail Corp., "courts have recognized many factors that are relevant for a court to consider when determining the appropriateness of the appointment of a receiver," including (but not limited to) "imminent danger that property will be lost or squandered, the inadequacy of available legal remedies, . . . and whether the interests of the plaintiff and others sought to be protected will in fact be well served by the receivership." 861 F.2d at 326-27 (internal citations omitted). GEE does not argue that none of these factors are met.[15] Moreover, "the appointment will not be disturbed unless there is a clear abuse of sound judicial discretion." Id. at 326. Here, the district court pointed out the undisputed facts that GEE had stopped making payments on its loans with KeyBank and that GEE was in a "precarious financial position, . . . endanger[ing] [KeyBank's] rights as a secured creditor." GEE makes no arguments

---

[15] In its reply brief, GEE asserts that KeyBank had an adequate legal remedy available to it -- money damages -- which further intertwined the parties' claims against one another. GEE has waived this argument, however, by raising it for the first time in its reply brief. See Mount Vernon Fire Ins. Co. v. VisionAid, Inc., 875 F.3d 716, 727 (1st Cir. 2017); Small Just. LLC v. Xcentric Ventures LLC, 873 F.3d 313, 323 n.11 (1st Cir. 2017).

related directly to the district court's stated reasons for appointing the Receiver or to the terms set forth within the detailed order naming the Receiver and detailing his duties.

What we do have is the plain language of the Commercial Security Agreement, signed in May 2017, which provides that if GEE defaulted by not making a payment when due then the appointment of a receiver would be one of KeyBank's available remedies. GEE acknowledges its agreement that KeyBank may seek the appointment of a receiver if an "event of default" occurs, but it does not concede that the contract also defines an event of default to include when a "[g]rantor fails to make any payment when due under the [i]ndebtedness." GEE admits, however, that it stopped making payments on the various loans from KeyBank, which, under the plain language quoted above, triggered an "event of default" and entitled KeyBank to exercise its right to seek the appointment of a receiver to protect its collateral security interests. The district court did not, therefore, abuse its discretion when it granted KeyBank's motion to appoint a receiver.

## BOTTOM LINE

The order appointing the Receiver is affirmed. Each party shall bear its own costs.